IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PATRICK THOMAS MCNEIL,

    Plaintiff,

v.                                                          Civil Action No. 3:10cv192

HALEY SOUTH, INC.,

    Defendant.

## MEMORANDUM OPINION

Before the Court are Defendant Haley South, Inc.'s ("Haley") Motion to Compel Arbitration, Motion to Stay This Lawsuit Pending Arbitration, and Motion to Appoint an Arbitrator. (Docket Nos. 10, 12, 8.) Plaintiff Patrick Thomas McNeil has responded to Haley's Motions (Docket No. 13), neither party sought a hearing, and the Court has determined that oral argument would not aid the decisional process. Accordingly, the Motions are ripe for adjudication. For the reasons that follow, the Court will GRANT Haley's Motion to Compel Arbitration (Docket No. 10), GRANT Haley's Motion to Stay This Lawsuit Pending Arbitration (Docket No. 12), and DENY Haley's Motion to Appoint an Arbitrator (Docket No. 8).

### I. Factual and Procedural Background

On May 6, 2010, McNeil, a United States citizen of Latino descent, filed an Amended Complaint (Docket No. 3) in this Court alleging that Haley unlawfully discriminated, retaliated, and terminated him because of his race. (Am. Compl. ¶¶ 1, 7.) McNeil contends that Haley hired him as a car sales person on October 2, 2008 and that the parties entered into a written employment agreement providing that McNeil would receive the greater of a $1,000.00 per week

draw or a twenty-five percent commission during the first ninety days of his employment. (Am. Compl. ¶¶ 9-10). Shortly after Haley hired McNeil, Haley's General Sales Manager, George Mastermaker, allegedly "began making racist comments and jokes about McNeil...," referring to McNeil as "Ricky Ricardo" and "Pepe Le Pew." (Am. Compl. ¶¶ 13-14.) Despite his objections to this behavior, McNeil contends that Mastermaker, along with other employees, continued to use these racially derogatory names when referring to McNeil and allegedly displayed a photograph of Ricky Ricardo in McNeil's stead. (Am. Compl. ¶¶ 15-20.)

Due to his repeated objections to the discriminatory behavior, McNeil asserts that Mastermaker implemented changes in McNeil's terms of employment, including a pay cut from a $1,000 per week draw to a $250.00 per week draw. (Am. Compl. ¶ 22.) McNeil complained to Haley's Human Resources Director as well as Haley's Vice President of Operations about the pay reduction and the discriminatory behavior. (Am. Compl. ¶¶ 23-26.) Shortly after, on November 13, 2008, Haley's General Manager, Brian Johnson, met with McNeil and "insisted" that McNeil sign a document agreeing to a reduction in pay. (Am. Compl. ¶ 27.) When McNeil refused to sign the document, Haley terminated him. (Am. Compl. ¶¶ 28-31.)

McNeil asserts five counts against Haley. Count One alleges discrimination because of race, in violation of Title VII of the Civil Rights Act of 1964.[1] (Am. Compl. ¶¶ 34-39.) Count Two alleges that Haley unlawfully retaliated against him because of his opposition to Haley's unlawful employment practices, in violation of Title VII. (Am. Compl. ¶¶ 40-47.) Count Three asserts that Haley intentionally discriminated against McNeil due to his race, in violation of 42

---

[1] 42 U.S.C. § 2000(e) *et seq.*

U.S.C. § 1981. (Am. Compl. ¶¶ 48-54.) Count Four contends that Haley engaged in unlawful retaliation in response to McNeil's opposition to Haley's unlawful employment practices, in violation of 42 U.S.C. § 1981. (Am. Compl. ¶¶ 55-62.) Finally, Count Five alleges that Haley breached McNeil's employment contract by terminating him without cause. (Am. Compl. ¶¶ 63-67.)

On July 2, 2010, Haley filed its Answer (Docket No. 6) to McNeil's Amended Complaint, asserting as an affirmative defense that McNeil's claims are subject to an agreement to submit to binding arbitration. (Answer 11.) That same day, Haley filed its Motion to Compel Arbitration. (Docket No. 10.) On July 7, 2010, Haley filed its Motion to Stay This Lawsuit Pending Arbitration (Docket No. 12) and its Motion to Appoint an Arbitrator (Docket No. 8). Haley argues that when McNeil began his employment with Haley, he signed and executed an "Agreement to Arbitrate." (Mot. Compel Mem. 1.) This agreement provides:

> In consideration of the Company's agreement to arbitrate legal disputes, I agree that any dispute of a legal nature arising under federal, state, or local law between me and the Company, including any such claim regarding Company property, discrimination, harassment, or civil rights law, will be subject to final and binding arbitration in accordance with the terms of the Company's Arbitration Policy and Arbitration Rules. I understand that the arbitrator, who will serve as judge and jury, has the same authority to award money damages and other relief as does a court or jury. I also understand that, while the Employee Handbook is otherwise subject to change at the Company's discretion, this Agreement to Arbitrate and the Company's Dispute Resolution policy will be binding and irrevocable for the Company and me as written, with respect to any claim arising while this Agreement is in effect. (Mot. Ex. A.)

Haley argues that, pursuant to this agreement, the pending lawsuit is subject to arbitration as provided under the Federal Arbitration Act ("FAA").[2] (Mot. Compel Mem. 2-9.) Haley further contends that the FAA empowers the Court to appoint an arbitrator, and Haley nominates David E. Nagle for appointment. (Mot. Compel Mem. 9-10.)

On July 16, 2010, McNeil filed his Memorandum in Opposition to Defendant's Motion to Compel Arbitration, Defendant's Motion to Stay This Lawsuit Pending Arbitration, and Defendant's Motion to Appoint an Arbitrator. (Docket No. 13.) On July 20, 2010, Haley filed its Reply Brief in support of its Motions. (Docket No. 14.) On August 20, 2010, pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a magistrate judge, and the Honorable Robert E. Payne reassigned the case to the undersigned Magistrate Judge. (Docket No. 18.)

## II. Analysis

### A. The Federal Arbitration Act

Congress passed the FAA "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000) (*quoting Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (alteration in original)). The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 limits the scope of the FAA to written contracts involving commerce. *Id.* "The effect of th[is]

---

[2] 9 U.S.C. § 1 *et seq.*

4

section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Once a court determines that the parties entered into a written agreement to arbitrate the underlying dispute, section 3 of the FAA directs courts to stay any pending lawsuit upon the motion of one of the parties, and section 4 directs courts to compel arbitration if necessary. *Id.* §§ 3, 4. The FAA gives district courts no discretion to do otherwise:

> By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. Thus, insofar as the language of the Act guides [the] disposition of [a] case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*Dean Winter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (*citing* 9 U.S.C. §§ 3, 4); *see Hightower v. GARI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001). The FAA also allows courts, upon the motion of either party, to appoint an arbitrator when the agreement to arbitrate fails to include a method of selecting arbitrators. 9 U.S.C. § 5. Unless the agreement to arbitrate provides otherwise, the FAA dictates that "arbitration shall be by a single arbitrator." *Id.*

## B. Haley's Motion to Compel Arbitration and Motion to Stay This Lawsuit Pending Arbitration

To compel arbitration under the FAA, Haley must establish:

"(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute."

*Atkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002) (*quoting Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). McNeil does not debate the existence of a dispute between the parties, the relationship of the transaction to interstate or foreign commerce, or his failure, neglect, or refusal to arbitrate the dispute. (Mem. Opp'n 3-10.) Further, if the Court finds a valid and enforceable agreement to arbitrate, McNeil does not dispute that such agreement would cover the underlying claims brought by this lawsuit. (Mem. Opp'n 3-10.)

Instead, the parties disagree on whether a valid written agreement exists that includes an arbitration provision. (Mem. Opp'n 3-10.) "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (*quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) (alteration in original)). Courts apply ordinary state-law principles governing contract formation to determine whether the parties entered into a valid, enforceable agreement to arbitrate under the FAA. *First Options of Chi. v. Kaplan*, 514 U.S. 938, 944 (1995); *Hightower*, 272 F.3d at 242; *Sydnor*, 252 F.3d at 305; *see* 9 U.S.C. § 2.

McNeil argues that the Agreement to Arbitrate before the Court is unenforceable or void under Virginia law for three reasons.[3] First, McNeil contends that the arbitration agreement fails under Virginia law because it suffers from patent ambiguity. (Mem. Opp'n 5.) Second, McNeil argues that the arbitration agreement's vagueness and indefiniteness render it unenforceable under Virginia law. (Mem. Opp'n 10.) Finally, McNeil asserts that, even if the Court finds a valid agreement exists between the parties, the parties agreed to mediate any employment-related dispute, rather than arbitrate disputes. (Mem. Opp'n 10.)

For the reasons that follow, the Court rejects McNeil's arguments and holds that the parties entered into a valid and enforceable Agreement to Arbitrate under Virginia law. The Court thus GRANTS Haley's Motion to Compel Arbitration and Haley's Motion to Stay This Lawsuit Pending Arbitration.

1. **The Agreement to Arbitrate Does Not Suffer from Patent Ambiguity**

McNeil contends that the Agreement to Arbitrate "suffers from patent ambiguity and therefore fails under Virginia law." (Mem. Opp'n 5.) The Agreement to Arbitrate subjects employment-related disputes to "final and binding arbitration in accordance with the terms of the Company's Arbitration Policy and Arbitration Rules." (Mot. Ex. A.) While Haley's Employee

---

[3] Haley and McNeil agree that the Court must apply Virginia law to determine whether a valid and enforceable agreement to arbitrate exists. (Mot. Compel Mem. 8-9; Mem. Opp'n 3-10.) A federal court must apply the conflicts rules of the state in which it sits when deciding a federal issue that incorporates state law. *Johnson v. Carmax, Inc.*, No. 3:10-cv-213, 2010 WL 2802478, at * 2 (E.D. Va. July 14, 2010) (*citing In re Merritt Dredging Co.*, 839 F.2d 203, 206 (4th Cir. 1988)). Virginia's conflicts rules "mandate that the law of the place where the contract was made governs questions of interpretation, validity, and enforceability of a contract." *Johnson*, 2010 WL 2802478, at * 2.

7

Handbook outlines Haley's "policies, programs, and benefits," it does not include a set of arbitration rules or policies. (Mem. Opp'n 9; Mot. Ex. B at 4.) Instead, under two separate sections labeled "Arbitration," the Handbook simply states that "[t]he Company has a policy of trying to resolve" employment-related disputes. (Mot. Ex. B at 21, 38.) McNeil argues that Haley's failure to provide a set of arbitration rules or policies creates a patent ambiguity rendering the agreement unenforceable. (Mem. Opp'n 5-7.) Under governing law, the Court finds otherwise.

To form a valid contract, Virginia law "requires acceptance of an offer, as well as valuable consideration." *Montagna v. Holiday Inns, Inc.*, 269 S.E.2d 838, 844 (Va. 1980) (describing the "essential elements of a valid contract") (internal citation omitted). The agreement must identify the subject matter and essential terms with reasonable certainty. *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 819 (Va. 1981); *Progressive Constr. Co. v. Thumm*, 161 S.E.2d 687, 691 (Va. 1968). Courts should deem an agreement ambiguous only if "'it may be understood in more than one way or when it refers to two or more things at the same time.'" *Vilseck v. Vilseck*, 612 S.E.2d 746, 749 (Va. Ct. App. 2005) (*quoting Video Zone, Inc. v. KF & F Props.*, 594 S.E.2d 921, 923 (Va. 2004)); *see Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 405 (4th Cir. 1998); *Firemen's Ins. Co. of Wash., D.C. v. Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779, 788-89 (E.D. Va. 2007). A contract is not ambiguous "'simply because the parties to the contract disagree about the meaning of its language.'" *Vilseck*, 612 S.E.2d at 749 (*quoting Pocahontas Mining L.L.C. v. Jewell Ridge Coal Corp.*, 556 S.E.2d 769, 771 (Va.

2002)); *see Firemen's Ins. Co. of Wash., D.C.*, 474 F. Supp. 2d at 789; *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 561 S.E.2d 663, 668 (Va. 2002). An ambiguity exists only if it is "objectively reasonable" to construe the contract in multiple ways or to conclude that the contract refers to two or more things at once. *Vilseck*, 612 S.E.2d at 749; *see Pocahontas Mining L.L.C.*, 556 S.E.2d at 771; *Mgmt. Enter., Inc. v. Thorncroft Co.*, 416 S.E.2d 229, 231 (Va. 1992). Patent ambiguity exists in a contract when the contract language itself can be interpreted in more than one way, while latent ambiguity exists where contract language may reasonably be interpreted in more than one way. *Va. Electric & Power Co. v. Norfolk S. Ry. Co.*, 683 S.E.2d 517, 526 (Va. 2009). When a contract suffers from patent ambiguity, the contract lacks validity because essentially no meeting of the minds between the parties occurred. *Zehler v. E. L. Bruce Co.*, 160 S.E.2d 786, 789 (Va. 1968).

Under Virginia law, the Agreement to Arbitrate unambiguously subjects both parties to final and binding arbitration over employment-related disputes. The agreement, signed by both McNeil and Haley's agent, provides that both parties agree to submit "any . . . claim regarding Company . . . discrimination, harassment, or civil rights law . . . to final and binding arbitration." (Mot. Ex. A.) No other objectively reasonable interpretation exists, and the Court finds that the agreement to arbitrate is unambiguous and enforceable under Virginia law.

Moreover, as discussed more fully below, the failure to specify the applicable body of arbitration procedures to be used does not render the contract unenforceable as patently ambiguous. "The question of 'what kind of arbitration proceedings' are required under the

arbitration clause is not a gateway issue for a court to decide." *Davis v. ECPI Coll. of Tech., L.C.*, 227 F. App'x 250, 253 (4th Cir. 2007) (No. 05-2122), *available at* 2007 WL 840506, at *2 (*citing Green Tree Fin. Corp.*, 539 U.S. at 452); *see also Dockser v. Schwartzberg*, 433 F.3d 421, 426 (4th Cir. 2006) (stating that the Court should address issues that concern the validity or the scope of the arbitration clause, while the issue of what kind of arbitration proceedings the parties agreed to should be left to the arbitrator). Here, the Court holds that the parties entered into a valid, unambiguous Agreement to Arbitrate.

### 2. The Agreement to Arbitrate Is Not Rendered Void Due to Indefiniteness and Vagueness

McNeil next argues that the contract to arbitrate must be declared void for indefiniteness and vagueness because it lacks vital details as to how arbitration will commence. (Mem. Opp'n 10.) McNeil asserts that under the Agreement to Arbitrate, McNeil agreed to arbitrate employment-related disputes, while Haley agreed to provide a set of arbitration rules and policies. (Mem. Opp'n 9.) McNeil contends that the Agreement to Arbitrate refers to nonexistent rules and policies, leaving the parties without a method to select an arbitrator, distribute the costs of arbitration, or determine the rules of discovery.[4] (Mem. Opp'n 9-10.)

---

[4] Employment-related disputes are "subject to final and binding arbitration in accordance with the terms of the Company's Arbitration Policy and Arbitration Rules." (Mot. Ex. A.) McNeil argues Haley's Employee Handbook outlines their "policies, programs, and benefits" (Mem. Opp'n 9; Mot. Ex. B at 4), but the Employee Handbook fails to establish a comprehensive set of arbitration rules or policies (*See* Mem. Opp'n 9; Mot. Ex. B). Instead, the Employee Handbook provides that "[t]he Company has a policy of trying to resolve any disputes that arise in connection with your employment" and that "[t]he Company has a policy of trying to resolve certain categories of disputes through arbitration. By accepting or continuing employment with the Company, you agree to submit disputes that arise in connection with your employment to arbitration." (Mot. Ex. B at 21, 38.)

Haley, in reply, argues that the absence of a specified body of arbitration rules does not prevent the enforcement of an otherwise valid arbitration agreement. (Reply 7-10.)

To form a binding contract in Virginia, "'an agreement must be definite and certain as to its terms and requirements; it must identify the subject matter and spell out the essential commitments and agreements with respect thereto.'" *Progressive Constr. Co.*, 161 S.E.2d at 691 (*quoting* 17 AM. JUR. 2D Contracts § 75). Virginia law requires reasonable certainty as to the contractual duties and obligations of parties. *Allen*, 281 S.E.2d at 819. While courts should not construct contracts for the parties, courts likewise should not "'permit parties to be released from the obligations which they have assumed if this can be ascertained with reasonable certainty from language used, in the light of all the surrounding circumstances.'" *Smith v. Smith*, 597 S.E.2d 250, 254 (Va. Ct. App. 2004) (*quoting Reid v. Boyle*, 527 S.E.2d 137, 143 (Va. 2000)). Virginia courts declare contracts void for indefiniteness and uncertainty only as a last resort. *Allen*, 281 S.E.2d at 820 (stating that Virginia is "reluctant to declare a contract void for indefiniteness and uncertainty" (*citing High Knob, Inc. v. Allen*, 138 S.E.2d 49, 53 (Va. 1964))); *Smith*, 597 S.E.2d at 254. "Indefiniteness 'must reach the point where construction becomes futile' for a court to declare the contract 'meaningless' and to 'justify the conclusion that in reality it accomplished nothing.'" *Smith*, 597 S.E.2d at 254-55 (*quoting Heyman Cohen & Sons, Inc. v. M. Lurie Woolen Co.*, 133 N.E. 370, 371 (N.Y. 1921)).

While Virginia courts declare a contract void for indefiniteness and uncertainty only reluctantly, courts also require a contract to contain terms mutually assented to by the contracting

11

parties to be enforceable. *Allen*, 281 S.E.2d at 820. Mutuality of contract exists when each party has exchanged promises in which each must be bound to act or refrain from acting. *C. G. Blake Co. v. W. R. Smith & Son*, 133 S.E. 685, 688 (Va. 1926). "Thus, '[i]f it appears that one party was never bound on its part to do the acts which form the consideration for the promise of the other, there is a lack of mutuality of obligation and the other party is not bound.'" *Busman v. Beeren & Barry Invs., LLC*, No. 2005-002650, 2005 WL 3476681, at *2 (Va. Cir. Ct. Dec. 12, 2005) (*quoting First Sec. Bank of Idaho v. Murphy*, 964 P.2d 654, 658 (Idaho 1998) (alteration in original)).

Contrary to McNeil's suggestion, Haley did not promise to promulgate arbitration policies and rules, but instead promised to employ McNeil and submit any employment-related disputes to arbitration. In consideration for McNeil's employment by Haley, McNeil accepted Haley's terms of employment, including the requirement that McNeil submit employment-related claims to final and binding arbitration. The Employee Handbook states, "By accepting or continuing employment with the Company, you agree to submit disputes that arise in connection with your employment to arbitration." (Mot. Ex. B at 38.) Mutuality of contract exists because both parties are bound to act: Haley agreed to employ McNeil while McNeil agreed to submit disputes arising from employment to arbitration. *See C. G. Blake Co.*, 133 S.E. at 688.

Indeed, courts have held that a mutual promise to arbitrate itself constitutes sufficient consideration for an arbitration agreement. *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 275 (4th Cir. 1997) (finding mutual obligations to arbitrate on behalf of the employer and employee in a

similar arbitration agreement); *see also Atkins*, 303 F.3d at 501. Here, the Agreement to Arbitrate specifically states, "In consideration of the Company's agreement to arbitrate legal disputes, I agree that any dispute of a legal nature arising . . . between me and the Company . . . will be subject to final and binding arbitration . . . ." (Mot. Ex. A.) Both parties are mutually bound to submit disputes arising from the employment relationship to arbitration.

The heart of McNeil's claim, however, flows from his challenge to the lack of specific terms regarding how to arbitrate, which he says renders this contract too vague. Under applicable law, this Court cannot find that lack of procedural or other rules renders the Agreement to Arbitrate fatally indefinite or vague. "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989). While this Court would prefer a contract that specifies terms, including an arbitrator selection provision and a cost provision, "parties are generally free to structure their arbitration agreements as they see fit . . . . [S]o too may they specify by contract the rules under which that arbitration will be conducted." *Id.* at 479. The Agreement to Arbitrate is enforceable and valid despite the fact that it does not establish a specific set of applicable rules and procedures. *See Green Tree Fin. Corp.*, 531 U.S. at 89-92 (holding that an arbitration agreement's failure to designate a particular controlling arbitration association, which resulted in a silence with respect to costs and fees, did not render the agreement unenforceable); *Sydnor*, 252 F.3d at 306 (holding that "the district court erred in

finding that the arbitration agreement was unconscionable because of unknown cost, fees, and procedures").[5]

### 3. The Parties Intended to Submit Their Employment-Related Disputes to Arbitration, Not Mediation

Finally, McNeil argues that, assuming the parties entered into a valid agreement, they agreed to submit any disputes to mediation, rather than arbitration. (Mem. Opp'n 10.) McNeil asserts that "Haley defines 'arbitration' as 'trying to resolve any disputes'" in their Employment Handbook and that this definition more closely resembles mediation rather than arbitration. (Mem. Opp'n 10.) Because Haley drafted the Employment Handbook and the Agreement to Arbitrate, McNeil contends that any ambiguity must be strictly construed against Haley. *See First Nat'l Bank v. Roy N. Ford Co.*, 252 S.E.2d 354, 357 (Va. 1979). This Court finds that the

---

[5] McNeil's authority that he claims finds otherwise does not persuade the Court. McNeil cites a case in which Ryan's Family Steak House ("Ryan's") entered into a contract with Employment Dispute Services, Inc. ("EDS"), in which EDS agreed to provide an arbitration forum and rules for employment-related disputes between Ryan's and its employees. *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 755 (7th Cir. 2001). As a condition of employment with Ryan's, Penn had to enter into a contract with EDS. *Id.* Within that contract, Penn agreed to submit his employment-related disputes with Ryan's to EDS, and EDS agreed to provide an arbitration forum. *Id.* Importantly, EDS retained the right to modify its rules and procedures at any time without notice to Penn. *Id.* at 757. The United States Court of Appeals for the Seventh Circuit held that "the arbitration agreement between EDS and Penn contains only an unascertainable, illusory promise on the part of EDS." *Id.* at 759. "[B]ecause the Rules specifically give EDS the sole, unilateral discretion to modify or amend them[, t]he contract is . . . hopelessly vague and uncertain as to the obligation EDS has undertaken." *Id.* at 759-60.

*Ryan's* is easily distinguishable. The Seventh Circuit itself noted that "Penn never signed an arbitration agreement, pre-employment or otherwise, with Ryan's," meaning it did not evaluate the "conventional case" where an employer and employee disputed an arbitration provision between them. *Id.* at 755.

Here, the Court evaluates what the Seventh Circuit would call a "conventional case." The employer and employee have promised to submit their employment-related disputes to final and binding arbitration, and the Court has found the agreement sufficient to rebuff the challenges McNeil raises to its terms.

parties intended to enter into an agreement in which they would submit their employment-related disputes to final and binding arbitration.

In Virginia, "'[t]he pole star for the construction of a contract is the intention of the contracting parties as expressed by them in the words they have used.'" *Va. Electric & Power Co. v. N. Va. Reg'l Park Auth.*, 618 S.E.2d 323, 326 (Va. 2005) (*quoting Ames v. Am. Nat'l Bank*, 176 S.E. 204, 216 (Va. 1934)). "'[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. . . . This is so because the writing is the repository of the final agreement of the parties.'" *Id.* (*quoting Berry v. Klinger*, 300 S.E.2d 792, 796 (Va. 1983) (alterations in original)). When analyzing the words the parties use in a contract, Virginia adheres to the "plain meaning rule." *Pac. Ins. Co.*, 148 F.3d at 405 (*citing Lerner v. Gudelsky Co.*, 334 S.E.2d 579, 584 (Va. 1985)). If a contract does not define a term, under the plain meaning rule, the Court must give the word its "'ordinary and accepted meaning.'" *Transcon. Ins. Co. v. RBMW, Inc.*, 551 S.E.2d 313, 318 (Va. 2001) (*quoting Scottsdale Ins. Co. v. Glick*, 397 S.E.2d 105, 108 (Va. 1990)); *see Lower Chesapeake Assocs. v. Valley Forge Ins. Co.*, 532 S.E.2d 325, 330 (Va. 2000).

In this case, the parties have entered in an agreement entitled "Agreement to Arbitrate," in which the parties agree that their employment-related disputes are "subject to final and binding arbitration." (Mot. Ex. A.) The term arbitration must be given its plain and ordinary meaning. *Transcon. Ins. Co.*, 551 S.E.2d at 318; *Lower Chesapeake Assocs.*, 532 S.E.2d at 330. Black's Law Dictionary defines "arbitration" as "[a] method of dispute resolution involving one or more

neutral third parties who are usu[ally] agreed to by the disputing parties and whose decision is binding." BLACK'S LAW DICTIONARY 119 (9th ed. 2009). On the other hand, Black's defines "mediation" – a word entirely absent from the documents before this Court – as "[a] method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution . . . ." *Id.* at 1070-71.

The plain meaning of arbitration fits squarely with the language of the contract providing for "final and binding arbitration" by an arbitrator who will "serve as judge and jury." (Mot. Ex. A.) Further, the United States Court of Appeals for the Fourth Circuit has "note[d] the presumption that one submits to arbitration, as opposed to mediation, precisely *because of* the binding quality of the process." *Rainwater v. Nat'l Home Ins. Co.*, 944 F.2d 190, 192 (4th Cir. 1991). Likewise, this Court has noted the difference between mediation and arbitration:

> [A] mediation process is separate and wholly distinct from an arbitration proceeding. A mediation process involves a neutral third party who attempts to assist the parties in reaching a mutually agreeable resolution. Significantly, the mediator has no power to impose a decision on the parties. In contrast, the third-party arbitrator renders a decision after a hearing at which both parties have an opportunity to be heard.

*Thompson*, 2008 WL 2019570, at * 4. The Court rejects McNeil's argument and declines to give the term "arbitration" any meaning aside from its plain and ordinary meaning. By choosing to use the term "arbitration," the parties conveyed their intent to submit their claims to a method of dispute resolution that would result in a final and binding decision.

16

### C. Haley's Motion to Appoint an Arbitrator

Haley's final motion requests the Court to appoint a single arbitrator as provided under section 5 of the FAA. *See* 9 U.S.C. § 5. Haley specifically nominates Mr. Nagle, a member of the American Arbitration Association, for appointment. (Mot. Compel Mem. 10; Mot. Ex. C.) Citing *Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999), for support, McNeil argues in response that the fundamental concepts of fairness and integrity of the arbitration process will be ruined if this Court sanctions Haley's unilateral selection of an arbitrator. (Mem. Opp'n 10-12.) McNeil instead requests the Court to provide an even-handed method of selecting an arbitrator. (Mem. Opp'n 12.) Haley replies that McNeil failed to show any bias on Mr. Nagle's part, and that McNeil previously failed to cooperate with Haley in selecting a mutually agreeable arbitrator. (Reply 12-13, Ex. D.)

The *Hooters* decision is inapposite to the case at bar. In *Hooters*, the Fourth Circuit held that Hooters had breached its agreement to arbitrate employment-related disputes because Hooters established a "dispute resolution process utterly lacking in the rudiments of even-handedness," *Hooters of Am., Inc.*, 173 F.3d at 935, but did so while carefully confining the applicability of its finding. *See Sydnor*, 252 F.3d at 306 ("The egregiously unfair arbitration rules in *Hooters*, however, provide only a limited departure from the general rule that arbitrators decide questions of fairness regarding arbitration proceedings."); *Hooters of Am., Inc.*, 173 F.3d at 941 ("Generally, objections to the nature of arbitral proceedings are for the arbitrator to decide in the first instance . . . . In the case before us, we only reach the content of the arbitration rules

17

because their promulgation was the duty of one party under the contract."). Haley's request that this Court appoint an arbitrator as authorized by section 5 of the FAA and Haley's nomination of Mr. Nagle do not parallel the egregiously unfair arbitration rules at issue in *Hooters*.

Still, section 5 of the FAA does not require the Court to accept a party's unilateral nomination of a particular arbitrator. *See* 9 U.S.C. § 5. Thus, the Court will DENY Haley's Motion to Appoint an Arbitrator so that the parties may cooperatively select a mutually agreeable arbitrator.[6] If the parties are unable to choose a mutually agreeable arbitrator within ten days, the parties must file Cross Motions to Appoint an Arbitrator.

### III. Conclusion

For the foregoing reasons, the Court will GRANT Haley's Motion to Compel Arbitration (Docket No. 10), GRANT Haley's Motion to Stay This Lawsuit Pending Arbitration (Docket No. 12), and DENY Haley's Motion to Appoint an Arbitrator (Docket No. 8).

Let the Clerk send a copy of this Memorandum Order to all counsel of record.

And it is SO ORDERED.

/s/ M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 9/13/10

---

[6] A three-person panel would seem most readily fair to the Court: each party could choose an arbitrator, and those two arbitrators could agree upon the third. However, the FAA presumes a single arbitrator unless the agreement provides otherwise, and the Court understands the cost-saving nature of the default provision. *See* 9 U.S.C. § 5.